UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DONALD BUSH,                                                                    Plaintiff,

v.                                                          Civil Action No. 3:14-cv-167-DJH

COMPASS GROUP USA, INC.,                                              Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Donald Bush alleges that Defendant Compass Group USA, Inc. violated the Kentucky Workers' Compensation Act, the Americans with Disabilities Act, the Kentucky Civil Rights Act, and the Family and Medical Leave Act when it terminated his employment. (Docket No. 1-2) Compass Group has filed a motion for summary judgment, arguing that Bush's claims are not supported by the evidence. (D.N. 26) Because the Court agrees that Bush has failed to establish a genuine factual dispute as to any of his claims, the motion for summary judgment will be granted.

## I.    BACKGROUND

Bush began working for Compass Group, a food-service provider, as a chef manager in November 2010. (D.N. 30-1, PageID # 755) His direct supervisor was Bill Tardy. Tardy oversaw food-service accounts in Ohio, Indiana, and Kentucky, including Kentucky Farm Bureau (KFB), to which Bush was assigned. (D.N. 26-2, PageID # 145-46; D.N. 26-3, PageID # 336)

In May 2012, Bush sent an e-mail to KFB managers Tom Logue, Steve McCormick, and Bryan Regenauer informing them that he was seeking another position for health reasons. The e-mail stated:

I have been diagnosed with severe cervical/thoracic spondylosis which has rapidly progressed since Oct 2011 and is negatively affecting me physically/emotionally both here and at home.  I have another appointment at Norton Le[a]therman Spine Center to be tested for Ankylosing Spondylitis due to current additional symptoms.  Both conditions are chronic and progressive, treatable, but not curable and require behavior modifications to slow the progression.  In the best interests of us all I am trying to transfer to a new property in the Fli[k] sector of Compass Group that is in need of a Chef Manager that is more manager/director than chef and has minimal caterings.  The position would not start until the new school year which will allow time for acclimating a new Chef Manager to KFB with a smooth transition.  I feel that Bill Tardy will oppose this and possibly even try to throw a stopper to it in which case I will need any assistance you can give.  I have two large caterings next week that I have arranged additional labor for and will be able [to] get through without issue.

(D.N. 26-2, PageID # 300)  At his deposition, Bush testified that he sent the e-mail because he wanted KFB management to know he was applying for other jobs and "wanted a smooth transition into another position that wasn't as physically demanding."  (*Id.*, PageID # 158)

Bush applied for the Flik chef manager position but was automatically disqualified at the "initial prescreen" stage because he had not informed his current supervisor, Tardy, that he was applying.  (D.N. 26-7, PageID # 500-01; *see* D.N. 26-2, PageID # PageID # 150-54)  From May to December 2012, Bush applied for a total of ten jobs at Compass.  (*See* D.N. 26-2, PageID # 303)  As with the first position, he failed to pass the initial prescreen for two of the jobs; he was found to be unqualified for four more.  (*See* D.N. 26-6; D.N. 26-7; 26-8)  Of the remaining three positions, one had already been filled when Bush applied, and one was not filled for business reasons; all three—indeed, eight of the ten overall—would have been promotions from his chef manager position.  (*See* D.N. 26-6; D.N. 26-7)

Meanwhile, Bush became increasingly restricted in his ability to perform the tasks required of a chef manager.  In an e-mail to Tardy on May 11, 2012, he indicated that he had suffered a work-related back injury.  (D.N. 30-1, PageID # 760)  He provided Tardy a note from his physician on May 30 indicating that he should be limited to "light duty."  (D.N. 26-2, PageID

2

# 164, 301-02)  A second doctor's note, dated August 2, 2012, instructed that Bush not lift more than twenty pounds or carry more than ten pounds.  (*Id.*, PageID # 170, 304)  Two weeks later, Bush was restricted to sedentary work, lifting no more than ten pounds and occasionally lifting or carrying up to five pounds.  (*Id.*, PageID # 179, 308-09)  He continued working with the assistance of subordinate and temporary employees for physical tasks.  (*Id.*, PageID # 178-81)  On August 13, 2012, Bush submitted an initial report of injury for workers' compensation purposes.  (D.N. 30-2, PageID # 790)

Based on Bush's comments that he was no longer able to do the job, KFB and Tardy moved forward with filling the chef manager position.  (D.N. 26-4, PageID # 365; D.N. 30-5, PageID # 812-13)  The job opening was posted in September 2012.  (D.N. 26-3, PageID # 347-48)  On October 24, Bush spoke to Compass Group human resources representative Lisa Daniszewski regarding his future at the company.  According to Daniszewski, Bush "seemed fine and welcome to assistance in his pursuit of internal opportunities."  (D.N. 30-6, PageID # 828)  After talking with Bush, Daniszewski recommended to Compass Group attorney Lisa Sherman that he be sent paperwork for a leave of absence "in the event he needed/wanted to complete [it] . . . and have him help out at other accounts while he continue[d] to look for work internally and externally.  If this continued on for more than 6-8 weeks, we would look at enhanced severance with a release of claims."  (*Id.*; *see id.*, PageID # 819)

The following day, after setting up a "chef test" for an applicant seeking to replace him as KFB's chef manager, Bush abruptly left the facility.  Later that evening, he notified Tardy and Logue that he would not be at work on October 26 because he was going to the hospital.  (D.N. 26-2, PageID # 231-35)  Bush was hospitalized for psychiatric treatment for the next week and received outpatient treatment for several weeks thereafter.  (*Id.*, PageID # 240-42)  He sought

3

and was granted FMLA leave from October 26, 2012 to January 18, 2013. (D.N. 30-6, PageID # 830) When he was released to return to work on December 7, 2012, the chef manager position at KFB had been filled. (*See* D.N. 26-9, PageID # 611) He applied for another position on December 19, 2012, but was not selected because he lacked the requisite experience. (D.N. 26-6, PageID # 402) Bush remained in contact with Daniszewski, who encouraged him to continue applying for jobs within Compass Group. (D.N. 26-10, PageID # 629-31) However, on January 7, 2013, Daniszewski informed Bush that he was considered "laid off due to lack of work" but "eligible for rehire." (*Id.*, PageID # 645)

Bush alleges that his termination constitutes disability discrimination under the Americans with Disabilities Act (ADA) and Kentucky Civil Rights Act (KCRA), as well as retaliation under the Kentucky Workers' Compensation Act and the Family and Medical Leave Act (FMLA). (D.N. 1-2) Compass Group seeks summary judgment on all claims. (D.N. 26)

## II.   ANALYSIS

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2)-(3). To survive a

motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

### A.    Workers' Compensation Retaliation

Pursuant to the Kentucky Workers' Compensation Act, "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim" for workers' compensation benefits. Ky. Rev. Stat. § 342.197(1). To prevail on this claim, Bush must first establish a prima facie case by proving that "(1) he engaged in a protected activity"; (2) Compass Group knew that he had engaged in protected activity; (3) he suffered an adverse employment action; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006) (citing *Brooks v. Lexington-Fayette Urban Cty. Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)). On the last element, Bush need not show that his protected activity was "the sole or even the primary reason for [his] termination"; however, he must demonstrate that the protected activity "was a 'substantial and motivating factor'" in his firing. *Id.* (quoting *First Prop. Mgmt. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993)). This showing can generally be made with "proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *Id.* (quoting *Brooks*, 132 S.W.3d at 804).

The parties agree that Bush engaged in protected activity. (*See* D.N. 26-1, PageID # 116; D.N. 30, PageID # 727) It is likewise undisputed that Compass Group (and more specifically,

Tardy) was aware of this activity and that Bush's termination was an adverse employment action.[1]   The only element in question, then, is whether there was a causal connection between Bush's pursuit of workers' compensation benefits and his termination.   *See Dollar Gen.*, 214 S.W.3d at 915.

Bush contends that he can satisfy this element through temporal proximity.   He asserts that "[e]ach time . . . [he] reported his workplace injury and work restrictions"—on May 11, May 31, August 3, and August 16, 2012—"he engaged in protected activity."   (D.N. 30, PageID # 728)   These instances were "sufficiently proximate in time to his termination" on January 14, 2013, Bush argues, to show that his pursuit of a workers' compensation claim was a substantial and motivating factor in Compass Group's decision to fire him.   (*Id.*, PageID # 729)

As noted above, temporal proximity between an employee's protected activity and subsequent adverse employment action can serve as evidence of a causal connection.   *See Dollar Gen.*, 214 S.W.3d at 915.   "The sooner adverse action is taken after the protected activity, the stronger the implication that the protected activity caused the adverse action, particularly if no legitimate reason for the adverse action is evident."   *Id.* at 916 (quoting *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003)).   There is no bright line after which adverse action is deemed too far removed to have been prompted by protected activity; rather, the Court must "view the time between the two events in the context of the entire circumstances" to determine whether the timing is significant.   *Id.*

Here, as Bush acknowledges, the protected activity (and Compass Group's awareness of it) began eight months before his termination.   (*See* D.N. 30, PageID # 728-29)   Bush does not

---

[1] In his complaint, Bush also alleged that he was subjected to "accelerated business audits" and "write-ups after passing" audits.   (D.N. 1-2, PageID # 12)   He appears to have abandoned these theories, however, as Compass Group presented evidence disproving them and Bush offered nothing in response.   (*See* D.N. 26-1, PageID # 116-18)

6

offer any other evidence of a connection between the two events.  Instead, he asserts that he "was not terminated because he was unable to work as a chef manager," but rather because KFB requested that he be terminated due to "his injury, inability to lift, the costs of accommodation, and Bush's desire to transfer."  (*Id.*, PageID # 729)  Citing his own post-deposition affidavit, Bush insists that he "was able to do the job of chef manager" (*id.*) and "could have returned to KFB as a chef manager had Compass Group been willing to consistently accommodate his work restrictions."  (*Id.*, PageID # 732)

The Court declines to consider Bush's affidavit to the extent it directly contradicts his deposition testimony.  (*See* D.N. 30-3)  Despite testifying repeatedly in his deposition that he was no longer able to perform the tasks required of a chef manager, with or without accommodation (*see* D.N. 26-2, PageID # 249-50, 255-56, 258-59, 263, 267), Bush states in his affidavit that he "was able to perform the duties of a chef manager, as described in the written job description provided to [him] on 11/23/10, from that date until today" (*id.*, PageID # 803) and that he "could have continued to work as a chef manager at Kentucky Farm Bureau" had accommodations been made.  (*Id.*, PageID # 804)  Specifically, Bush avers that "dependable labor to do the lifting and carrying" of items heavier than ten pounds would have allowed him to continue in his job.  (*Id.*)  But Bush "cannot create a disputed issue of material fact by filing an affidavit that contradicts [his] earlier deposition testimony."  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) (citing *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).  Thus, insofar as he relies on the affidavit to demonstrate that he was capable of performing the chef manager job, Bush fails to establish a genuine dispute of material fact.

On the remaining evidence, the Court cannot find that there was "no legitimate reason" for Bush's termination.  *Dollar Gen.*, 214 S.W.3d at 916.  The undisputed facts show that Bush intended to leave his job at Kentucky Farm Bureau for a position with fewer physical demands, and he had conveyed this plan to KFB management.  (*See* D.N. 26-2, PageID # 154-60, 300)  Given Bush's admitted inability to continue as a chef manager and his failure to secure another job with Compass Group, the fact that he was replaced and ultimately laid off for lack of work does not arouse suspicion.  In the absence of any other evidence linking Bush's termination to his pursuit of workers' compensation benefits, the Court finds that a four- to eight-month gap is not sufficient temporal proximity to establish the requisite causal connection.  His workers' compensation retaliation claim therefore fails.

### B.     Disability Discrimination

To establish a prima facie case of disability discrimination, Bush must show that "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability."  *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008)).  The parties devote considerable argument to the question of whether Bush was disabled within the meaning of the ADA and KCRA.  (*See id.*, PageID # 712-15; D.N. 26-1, PageID # 127-29)  They disagree as to whether the 2008 Americans with Disabilities Act Amendment Act (ADAAA), which broadened the definition of disability, applies to Bush's KCRA claim.  (*See* D.N. 26-1, PageID # 125; D.N. 30, PageID # 712)  As Bush acknowledges, however, this Court has previously declined to apply the ADAAA amendments to claims arising under the KCRA. *See Darby v. Gordon Food Servs., Inc.*, No. 3:11-cv-646-DJH, 2015 U.S. Dist. LEXIS 74135, at

*14 n.2 (W.D. Ky. June 9, 2015) ("[B]ecause the KCRA has not been amended to conform with the ADAAA, courts continue to interpret the KCRA consistently with pre-amendment ADA law." (citing *Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011); *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013))).   Assuming, for purposes of both statutes, that Bush is disabled, his disability-discrimination claims nevertheless fail because he has not established that he was otherwise qualified to perform the essential functions of the chef manager position.

Pursuant to both the ADA and the KCRA, a person is a "qualified individual" if he, "with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires."  42 U.S.C. § 12111(8); Ky. Rev. Stat. § 344.030(1).  Bush admitted repeatedly during his deposition that he was unable to perform the job of chef manager, with or without accommodation.  (*See* D.N. 26-2, PageID # 249-50, 255-56, 258-59, 263, 267)  Now, however, he points to the written job description—which states that a chef manager must be able to lift and carry items weighing up to ten pounds—and asserts that he could have performed the job as described, with accommodation for lifting heavier items.  (D.N. 30, PageID # 716; *see* D.N. 30-1, PageID # 758)  As explained above, the Court rejects Bush's attempt to create a factual dispute through his contradictory post-deposition affidavit.  *See* Part II.A, *supra*.  Moreover, contrary to Bush's suggestion, the written job description is not dispositive.

Although the ADA and KCRA provide that a written job description "shall be considered evidence of the essential functions of the job," such a description is not controlling.  42 U.S.C. § 12111(8); Ky. Rev. Stat. § 344.030(1); *see Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003)).  Rather, the Sixth Circuit has instructed that "the determination of whether physical qualifications are

essential functions of a job requires the court to engage in a highly *fact-specific* inquiry" and "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (citing *Arline v. Sch. Bd. of Nassau Cty.*, 772 F.2d 759, 764-65 (11th Cir. 1985)).

Here, Bush testified unequivocally that he was physically unable to perform the duties required of a chef manager.  (*See* D.N. 26-2, PageID # 249-50, 255-56, 258-59, 263, 267)  His post-deposition affidavit confirms that his "*actual* job duties were different from those in the written description" because they involved regular lifting and carrying of items—for example, tables or bulk-packaged food—weighing up to fifty pounds.[2]  (D.N. 30-3, PageID # 803 (emphasis added); *see id.*, PageID # 804)  The fact that Bush needed a doctor's note to restrict his lifting to ten pounds further indicates that the written job description did not "reflect the actual functioning and circumstances of" the chef manager position.  *Hall*, 857 F.2d at 1079.  The Court concludes, based on Bush's testimony and affidavit, that lifting and carrying items heavier than ten pounds were essential functions of the chef manager position.  Because the undisputed evidence shows that Bush could not perform those functions in December 2012, he is not otherwise qualified for the position, and his ADA and KCRA claims fail.

## C.     FMLA Retaliation

Two theories of recovery are available under the FMLA: (1) the "entitlement" or "interference" theory and (2) the "retaliation" or "discrimination" theory.  *Arban v. West Publ'g*

---

[2] Bush also acknowledges in his affidavit that "both Kentucky Farm Bureau and Bill Tardy expected [him] to lift up to fifty pounds while cooking food and running catering events." (D.N. 30-3, PageID # 804)  In addition to any written job description, the Court is to consider "the employer's judgment as to what functions of a job are essential."  42 U.S.C. § 12111(8); Ky. Rev. Stat. § 344.030(1).

*Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003).   Under the interference theory, an employer violates the FMLA by "interfer[ing] with the FMLA-created right to medical leave or to reinstatement following the leave."[3]  *Id.* at 401 (citing *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)).   The retaliation theory, meanwhile, protects employees who have exercised their FMLA rights and suffered retaliation or discrimination as a result.  *Id.* at 403.

Compass Group notes in its briefs that Bush has not asserted an interference claim in this action, and Bush does not contend otherwise.  (*See* D.N. 26-1, PageID # 109; D.N. 33, PageID # 876)  Nevertheless, the bulk of the parties' argument regarding the FMLA is whether Bush should have been reinstated to his chef manager job or an equivalent position—an issue relevant to an interference claim, but not a claim of retaliation.  *See Arban*, 345 F.3d at 401.  A plaintiff may not raise new claims or theories of recovery in response to a summary judgment motion. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citing *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005)).  As Bush's complaint alleged only FMLA retaliation, the Court's analysis will be limited accordingly.  (*See* D.N. 1-2, PageID # 14 (alleging that "Defendant terminated the Plaintiff for taking approved leave pursuant to the Family and Medical Leave Act" and that "Defendant's adverse treatment of Plaintiff . . . was because of his opposition to practices made unlawful by the Family and Medical Leave Act"))  *Cf. Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) ("Generally, 'a plaintiff ha[s] not waived a claim based on the interference theory where the complaint alleged general violations of 29 U.S.C. § 2615 that could apply to both interference

---

[3] An employee who takes leave under the FMLA has a right to reinstatement upon his return, either "to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment."  29 C.F.R. § 825.214.

and retaliation claims.'" (alteration in original) (quoting *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 335 (6th Cir. 2009)).

The *McDonnell Douglas* burden-shifting analysis applies to FMLA retaliation claims. *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To make out a prima facie case of FMLA retaliation, Bush must show that (1) he "availed [him]self of a protected right under the FMLA"; (2) he "suffered an adverse employment action"; and (3) "there was a causal connection between the exercise of [his] rights under the FMLA and the adverse employment action." *Edgar*, 443 F.3d at 508 (citing *Skrjanc*, 272 F.3d at 314). Compass Group concedes that the first two elements are met and that it was aware of Bush's protected activity. (D.N. 26-1, PageID # 109) However, it maintains that Bush cannot show he was terminated *because* he took FMLA leave. (*Id.*)

Bush again relies on temporal proximity to satisfy the causal-connection element, noting that his employment was terminated approximately one month after he was released to return to work. (D.N. 30, PageID # 723-24) Yet the record is clear that the wheels were in motion for Bush's termination before he left on October 25, 2012—Bush himself points out that Compass Group's plan to offer him severance if he did not find another job within six to eight weeks was in place "before [he] ever indicated that he would need to take FMLA leave." (*Id.*, PageID # 706) Moreover, Daniszewski continued to help Bush look for another position within Compass Group after his FMLA leave ended. (*See* D.N. 26-10, PageID # 629-31, 645) On the evidence presented, the Court cannot conclude that the timing of Bush's termination establishes the causal connection required to make out a prima facie case of FMLA retaliation.

12

III.     CONCLUSION

Bush has failed to demonstrate a genuine dispute of material fact with respect to any of

his claims.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant Compass Group USA, Inc.'s Motion for Summary Judgment

(D.N. 26) is **GRANTED**.  A separate judgment will be entered this date.

July 13, 2016

**David J. Hale, Judge**
**United States District Court**

13